**REID et al. v. UNITED STATES.**

No. 12769.

United States Court of Appeals
Fifth Circuit.

Nov. 16, 1949.

744

W. Paul Carpenter, Atlanta, Ga., O. C. Hancock, Atlanta, Ga., for appellants.

Allen E. Lockerman, Spl. Asst. to U. S. Atty., Atlanta, Ga., J. Ellis Mundy, U. S. Attorney, Atlanta, Ga., Lamar N. Smith, Asst. U. S. Atty., Atlanta, Ga., for appellee.

Before HUTCHESON, McCORD, and SIBLEY, Circuit Judges.

SIBLEY, Circuit Judge.

This appeal is by Fletcher Reid and Johnnie Miles from a conviction on March 24, 1949, and sentences imposed on April 1, 1949, upon an indictment returned July 24, 1946, which charged them and Phil Bodne, Benjamon Reid, and Murray Cowan, and other persons unknown, with conspiring together to violate Title III, Section 2(a) of the Second War Powers Act, 50 U.S.C.A.Appendix, § 633, and two specified Ration Orders, and with defrauding the United States in respect of its governmental function of the rationing of gasoline. The period of conspiracy named was from January 1, 1945, to the date of indictment, July 24, 1946. The object of the conspiracy was stated broadly to be to obtain gasoline · ration coupons and sell them to the black market and thus defeat the orderly distribution of gasoline, a rationed commodity, while the United States was at war. Five overt acts were alleged, each averring a transaction in which Bodne, Cowan, and Fletcher Reid were named as participating, and no one else.

■■■ 1. Each appellant insists that the evidence did not warrant the submission of his guilt to the jury, and that motions raising that question ought to have been sustained. The evidence is plain that an entire building in Atlanta several stories high, closely guarded, was used by the United States to store and issue new ration coupons for gasoline, and on a different story to receive and store used coupons; that some 20 employees only had access to the coupons, supposedly watched by guards. That Johnnie Miles was employed in handling the new coupons and was a messenger who came and went alone from the building and delivered coupons outside; the argument being that he, by connivance of a guard, could easily smuggle cartons of coupons to unauthorized persons, and had the best opportunity to do it. The evidence is direct that Fletcher Reid, running a filling station, delivered such coupons in large quantities to black market customers for large sums of money, and had formally confessed his guilt. Bodne pleaded guilty. Cowan turned witness for the prosecution. There is ample evidence to show such a conspiracy as is charged, and that Fletcher Reid was the sales outlet for the coupons. Without going into detail, there was as to Miles evidence that on one occasion Fletcher Reid was approached by a witness, Cullins, to buy 100,000 gallons of coupons, that Reid made a telephone call, and stated he could get the coupons about four o'clock; a few minutes before the hour Johnnie Miles drove up in an automobile and handed Reid a paper bag which Reid took back into a room; that ·Cullins then asked Miles if he could not in future get ·coupons direct from Miles, but Miles said if Cullins wanted any more tickets he would have to see Reid. Cullins then followed Reid into the room and Reid gave Cullins a paper bag containing the desired coupons and Cullins paid him $7000. There was also evidence that Miles had a salary of only about $1500 per year but about this time bought two nice automobiles; and that a shortage of about 11,000,000 gallons of coupons was discovered at the storage building in June,

1945. There was enough to carry to the jury the question of Miles being connected with the conspiracy carried on by the others named in the indictment.

2. Miles pleaded specially that he had been tried for and acquitted of the same offense on October 18, 1948, which plea was denied. In support of it there was presented another indictment in the same court, and the record of the trial under it, and the judgment sustaining a motion for acquittal made by Miles. The question is whether the former acquittal was for the "same offense", within the Constitutional provision against second jeopardy. The indictment thus presented was returned February 25, 1947, some seven months after that on which Miles was convicted, though tried first. It charged that commencing May 1, 1945, and continuing till the date of indictment, Jesse R. Adamston, Johnnie L. Miles, Glenn Hanie Cleveland, Augustus Streetman, Merritt Warren, and D. C. Staton did conspire with each other and other persons unknown to the grand jurors, to violate Title III, Section 2(a), of the Second War Powers Act, and the same two ration orders mentioned in the prior indictment, the object of the conspiracy being stated in the same words also. Twenty-four overt acts were alleged, all different from and participated in by different persons from those in the prior indictment, and several of a date later than the finding of the prior indictment. On the face of the record Miles was charged in the two indictments with engaging in two conspiracies, each with a different group of co-conspirators; which would be different offenses, though their objects were alike, and though they were breaches of the same laws, and were carried on in the same judicial district and in part at the same time. Miles does not dispute this, but argues that the "persons unknown" in each indictment might be the persons named in the other indictment, so that after all there was one big conspiracy. He also urges that it is shown that in the first trial the very same evidence was introduced to connect him with the conspiracy as was offered in the second trial.

One pleading former jeopardy for the same offense has the burden of proving it. Kastel v. United States, 2 Cir., 23 F.2d 156. Miles has not shown that the "persons unknown" in his first trial were the persons named, or any of them, in the older indictment on which he was later tried. They could not well be, for the grand jury knew and had indicted those persons seven months before. In neither trial did unknown persons cut any figure, but the evidence related only to named persons. There is a failure to connect the two conspiracies into one by this means. What happened in the first trial, as shown by the court reporter's transcript, was that the conspiracy charged was proved, but the witnesses wholly failed to identify Miles with it. It was shown indeed that he worked in the building with access to the coupons, large amounts of which were missing, but he was not shown to be connected with a conspiracy among the persons named in the indictment, or even to be acquainted with any of them. As a last effort, the evidence above alluded to of Cullins and the transaction with Fletcher Reid of a like character was put in. The counsel of Miles, then and now representing him, moved for a verdict of acquittal on the ground that this evidence was irrelevant to the case on trial, and could be admissible only as a similar offense committed about the same time to show motive and intent, but it could not supply the lack of proof that he had entered into the conspiracy then on trial with the persons named in that indictment. This motion prevailed and the judgment of acquittal was given. The same trial judge in the case now before us states: "The court directed a judgment of acquittal in the Miles case, prior case, because while the evidence showed he may have been, or would justify a finding that he was, engaged in the black market business in gasoline coupons, it was not sufficient to show he was so engaged with those with whom he was charged in the indictment. It was a failure of proof, and Fletcher Reid was not on trial, nor Murray Cowan, nor Frank Cullins, and I think that a judgment of acquittal in one conspiracy for failure to prove is not a former jeopardy or former trial on a second conspiracy and a different conspiracy, though involving the same gen-

eral type and nature of conspiracy." Miles has not only failed to show that he has been tried and acquitted of conspiring with Fletcher Reid, Cowan, and others as now charged, but shows that he is fairly estopped so to claim, because he obtained the acquittal on the very ground that it was a different conspiracy charge.

Judgment affirmed.