## UNITED STATES of America

v.

## INMON, Martel a/k/a Marty, Appellant.

### No. 77–1205.

United States Court of Appeals,
Third Circuit.

Submitted Oct. 3, 1977.

Decided Nov. 28, 1977.

---

7. For the text of chapters 5:4.1 and 6:8 *see* Majority Opinion at 319.

Blair A. Griffith, U. S. Atty., David B. Atkins, Asst. U. S. Atty., Edward J. Schwabenland, Asst. U. S. Atty., Pittsburgh, Pa., for appellee.

G. William Bills, Jr., Pittsburgh, Pa., for appellant.

Before GIBBONS and WEIS, Circuit Judges, and MEANOR,* District Judge.

OPINION OF THE COURT

GIBBONS, Circuit Judge.

 This is an appeal by Martel Inmon from the denial of his motion to dismiss an

* Honorable H. Curtis Meanor, United States District Judge for the District of New Jersey, sitting by designation.

indictment on double jeopardy grounds.[1] The government has moved to dismiss the appeal as interlocutory. That motion is denied since pretrial orders rejecting claims of former jeopardy are final decisions within the meaning of 28 U.S.C. § 1291. *Abney v. United States*, 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977); *United States v. DiSilvio*, 520 F.2d 247 (3d Cir. 1975). On the merits of the appeal, we affirm the district court with respect to certain substantive charges in the indictment but reverse and remand on the conspiracy charge.

## I. THE CONSPIRACY CHARGE

### A. *Proceedings in the District Court*

On July 14, 1976, two indictments were returned against Inmon. In No. 76–140 *(Inmon I)* the government charged that he conspired with nine co-defendants, one named but unindicted co-conspirator, and other co-conspirators whose names were unknown to distribute and possess, with intent to distribute, heroin, a narcotic drug and schedule I controlled substance, in violation of 21 U.S.C. § 841(a)(1). In No. 76–141 *(Inmon II)* the government charged that he conspired with seventeen co-defendants, two named but unindicted co-conspirators, and other co-conspirators whose names were unknown to distribute and possess, with intent to distribute, heroin in violation of the same statute.[2] In each indictment the *locus criminis* was Pittsburgh, Pennsylvania. *Inmon I* charged that the conspiracy continued from September 1, 1975, to April 4, 1976, while *Inmon II* charged a conspiracy between February 1, 1975, and July 14, 1976. *Inmon I* recited overt acts in Pittsburgh between October 10, 1975, and April 3, 1976; *Inmon II* recited overt acts in Pittsburgh between September 6, 1975, and July 13, 1976.

Although Inmon was the only conspirator charged in both indictments, the personnel of the alleged conspiracies overlapped. Herbert Segure, the unindicted co-conspirator named in *Inmon I*, was indicted in *Inmon II*. Alvin Clark and Roy Daviston, the unindicted co-conspirators named in *Inmon II*, were indicted in *Inmon I*. Both indictments referred to other unknown persons.

Of the twenty-three overt acts charged in *Inmon I*, Inmon was an alleged participant in twenty-one. Of the thirty-three overt acts charged in *Inmon II*, Inmon was an alleged participant in thirteen. The overt acts charged in both indictments suggest that Inmon played a central role in the heroin trade in Pittsburgh. Two affidavits in the record support this view. In August, 1975, the government sought to install a pen register device on the telephone of Arlene Stubbs, one of the co-defendants in *Inmon II*. The affiants, an Assistant United States Attorney and a Special Agent of the Drug Enforcement Administration, described her as Inmon's paramour and charged that her telephone was used by Inmon to facilitate heroin distribution. The DEA Special Agent continued:

> For the reasons set forth below, I believe that Martel Inmon has been a significant Pittsburgh area narcotics trafficker for the past three years and that he presently controls the distribution of the major portion of all white heroin in the Greater Pittsburgh Area. Information received from various reliable sources (including Confidential Informants # 1, # 2 and # 3 described below) indicates that Inmon distributes as much as 1 pound of pure heroin every two weeks. It is my opinion, based on my investigation of narcotics trafficking in the Pittsburgh Area, as well as discussions with other knowledgable state and

1. The district court's decision was announced on January 4, 1977, but no order was entered at that time. A notice of appeal was filed on February 4, 1977, prior to the entry of an order reflecting the January 4, 1977, decision. Fed.R. App.P. 4(b) provides that "[a] notice of appeal filed after the announcement of a decision, sentence or order but before entry of the judgment or order shall be treated as filed after such entry and on the day thereof." Thus the notice of appeal was timely filed.

2. A superseding indictment was filed in *Inmon II* on September 24, 1976, charging the same parties with the same offense within the same time.

federal narcotics agents, that the Inmon organization controls at least 75% of all the white heroin distributed in the Pittsburgh Area and is in direct competition with another large heroin organization, responsible for the distribution of brown heroin in Pittsburgh.

On November 9, 1976, Inmon pleaded guilty to the conspiracy charge in *Inmon I* and to one substantive charge in that indictment. On January 4, 1977, he moved before the district court to dismiss the *Inmon II* indictment because his guilty plea to *Inmon I* had placed him in former jeopardy. The district court denied the motion, and this appeal followed.

## B. *Discussion*

■ This case requires the exploration of the procedural consequences of the rule of *Abney v. United States, supra,* and *United States v. DiSilvio, supra,* that the denial of a motion to dismiss an indictment on the ground of former jeopardy results in an appealable final order. The government, in a brief prepared before the decision in *Abney,* urged that we should overrule *DiSilvio* and that we should only review the rejection of double jeopardy claims after the completion of the second trial, when we would have the benefit of testimony against which to measure the identity of the former and later charges. That course would have avoided some of the procedural problems we now face. But, as the Supreme Court recognized in *Abney,* it would also have required that the defendant submit to the violation of his constitutional right not to be tried again for the same offense in order to raise the issue. Since that course is no longer open, we must face the procedural problems. As necessary consequences, the *Abney-DiSilvio* rule requires (1) that there must be a pretrial proceeding in which an appropriate record may be made to test a double jeopardy claim; (2) that there must be rules about going forward with proof, burden of persuasion, and weight of the evidence; and (3) that the procedure must take account of other constitutional rights, such as the privilege against self-incrimination.

In his motion to dismiss the *Inmon II* indictment Inmon brought forward a prima facie non-frivolous claim that the two indictments charged the same conspiracy. It had the same locus, the same objects, and several of the same participants. The conspiracy charged in *Inmon I* occurred during the time of the conspiracy charged in *Inmon II.* Inmon was a central figure in both. The government, nevertheless, contends that there were two separate conspiracies and that Inmon was separately, though centrally, involved in both. This is possible, but unlikely. In the district court, however, the government offered no evidence of the existence of separate conspiracies. It relied there—as it relies here—on the argument that a double jeopardy claim should not be considered until the end of the second trial, at least when the two indictments are not absolutely identical. Since that contention is foreclosed by the decision in *Abney,* some method for pretrial resolution of the conflict is therefore necessary.

These alternatives are available: we can hold that, when a defendant tenders a double jeopardy claim which the government resists, he has the burden of persuading the fact-finder that the two offenses are one; or we can hold that, when a defendant tenders a prima facie non-frivolous double jeopardy claim, the government has the burden of persuading the fact-finder that the indictments actually refer to separate offenses. Either alternative requires a determination of the appropriate evidentiary burden: preponderance of the evidence, clear and convincing evidence, or beyond a reasonable doubt.

This case, in which the defendant has already pleaded guilty to one indictment, illustrates the impracticality of placing the evidentiary burden on him. Inmon would be required to prove facts establishing the charge of conspiracy to which he pleaded guilty and to prove facts establishing the second conspiracy as well. How he could do either, without access to the proof on which the government proposed to rely and with-

out the ability to offer immunity to prospective witnesses, is not readily apparent. Even after a trial on the first indictment, the defendant would lack access to the government's proof of the second offense.

Undoubtedly, these practical difficulties, prompted the Second Circuit to rule in *United States v. Mallah,* 503 F.2d 971 (1974), that, while the defendant has the burden of going forward by putting his double jeopardy claim in issue, once he has made a non-frivolous showing, the burden of persuasion shifts to the government. In *Mallah* the double jeopardy claim was made after a trial on the first indictment and preserved during the second trial. The underlying facts, however, are quite similar to those in *Inmon's* case.

Here, the alleged two conspiracies occurred in the same general location at the same general time. One involved a large-scale narcotics ring; the known co-conspirators in the other transaction were foot soldiers. We know that a core member of the large-scale operation participated in both transactions, and that the narcotics business is such that it is likely that the foot soldiers were backed up by a larger organization. Moreover, Beverly Jalaba, one of the foot soldiers in *Pacelli I,* [*United States v. Pacelli,* 470 F.2d 67 (2 Cir. 1972)], was Pacelli's mistress; so close to Pacelli, it is also likely that she was close to his organization.

We think that these facts are sufficient to satisfy appellant's burden of going forward, of putting his double jeopardy rights at issue. At this point, the burden shifts to the government to rebut the presumption, which the facts in this case support, that Papadakos, Possas and Jalaba were part of the Pacelli/Sperling organization.

. . . . . .

. . . We conclude . . . that the government has not rebutted the presumption raised by appellant, that the two conspiracies of which he has been convicted are in fact one conspiracy, and we reverse the conviction below on the conspiracy count.

503 F.2d at 985–86. As observed earlier, in *Mallah* the issue was presented to the court after the second trial. The *Abney-DiSilvio* rule, however, requires its consideration earlier if the defendant raises a double jeopardy issue in a pretrial motion. We see no reason why the rule about the burden of persuasion on the double jeopardy issue should be different when the issue is raised before trial.

*Mallah* is one of the handful of federal cases which have dealt, even peripherally, with the placing of the burden of persuasion. *United States v. Wilson,* 32 U.S. 150, 7 Pet. 150, 8 L.Ed. 640 (1833), includes dicta by Chief Justice Marshall to the effect that a defendant must plead the bar of a prior conviction before the court must notice it. But neither in *Wilson* nor in any other case with which we are familiar did the Supreme Court discuss the placement of the burden of persuasion or the weight of the evidentiary burden.

■ This Circuit has recognized that double jeopardy is a defense which must be pleaded by the defendant. *United States v. Young,* 503 F.2d 1072, 1074 (1974). Like the present case, *Young* involved a heroin distribution conspiracy and a prior guilty plea to a similar conspiracy indictment. The double jeopardy claim was raised at the second trial, and the district court, holding that the plea was timely, rejected it. This court reversed and remanded, because we concluded that the lower court had erred in failing to consider all factors relevant to determine whether the government had arbitrarily subdivided a single conspiracy. *Young* also rejected the government's contention that, when there is a dispute over' material facts concerning the existence *vel non* of a single conspiracy, the issue, like any other material fact, must be presented to the jury. Judge Biggs reasoned as follows:

Adoption of the government's position in cases such as this would indeed place counsel for the defense in the unenviable position of having to bring before the jury the prior conviction, which ordinarily, of course, it would not be mandatory

to do. It would be necessary for counsel to argue that the charge brought in the instant proceeding is in fact the same as that to which his client pleaded guilty and then if the jury were to determine the threshold question adversely to the defendant, to reverse field and assert that the defendant is not guilty on this occasion. We are not wont to place defendants in the position of being forced to increase substantially the probability of their conviction by their own assertions at the risk of waiving rather significant constitutional protection.

503 F.2d at 1077 (footnote omitted). Thus *Young* recognized that the double jeopardy issue must be decided by the court and that the court must hold an evidentiary hearing if there is a factual dispute. The opinion does not, however, discuss either the burden of persuasion or the evidentiary burden.

In other circuits authority can be found suggesting that a burden rests on the defendant. Often the reference, in the context of the case, must be understood as referring to the defendant's obligation to raise the issue by an appropriate pleading before the end of the trial.[3] Sometimes, in cases involving a retrial after a mistrial, the reference is to the requirement that the defendant show that the district court abused its discretion when it discharged the first jury.[4] Some cases refer to the defendant's burden of establishing the collateral estoppel effect of a verdict in his favor in a prior trial on an issue of fact which may arise in a later trial for a different crime.[5] None of these cases, however, addresses the issues here—the burden of persuasion and the evidentiary burden, when the defendant puts in issue the claim that he has been twice charged with the same offense.

The only circuit court opinions we have found which discuss the burden of persuasion in cases such as this are *Reid v. United States*, 177 F.2d 743 (5th Cir. 1949),[6] and *United States v. O'Dell*, 462 F.2d 224 (6th Cir. 1972). Both involved multiple conspiracy indictments, and both state, without analysis or reason, that one pleading former jeopardy for the same offense has the burden of proving the unitary nature of the conspiracy. In both cases the issue was determined in the trial of the second indictment with the benefit of a full evidentiary record, and in neither case was the placement of the burden of persuasion of critical importance. Both were decided before *Abney*—before, in other words, it became clear that a pretrial evidentiary hearing was appropriate. Neither explored the practical difficulties which we considered above and which were discussed by the Second Circuit in *Mallah* and by Judge Biggs in *Young*. Moreover, neither considered the interaction between the fifth amendment double jeopardy and self-incrimination privileges, to which further reference is made hereafter.

We conclude, as did the Second Circuit in *Mallah*, that, when a defendant makes a non-frivolous showing that an indictment charges the same offense as that for which he was formerly placed in jeopardy, the burden of establishing separate crimes—in this case separate conspiracies—is on the

---

3. E. g., *United States v. Mayes*, 512 F.2d 637, 652 (6th Cir.), *cert. denied*, 422 U.S. 1008, 95 S.Ct. 2629, 45 L.Ed.2d 670, 423 U.S. 840, 96 S.Ct. 69, 46 L.Ed.2d 59 (1975); *United States v. Hill*, 473 F.2d 759, 763 (9th Cir. 1972); *Douglas v. Nixon*, 459 F.2d 325, 327 (6th Cir.), *cert. denied*, 409 U.S. 1010, 93 S.Ct. 453, 34 L.Ed.2d 303 (1972); *United States v. Buonomo*, 441 F.2d 922, 925 (7th Cir.), *cert. denied*, 404 U.S. 845, 92 S.Ct. 146, 30 L.Ed.2d 81 (1971); *Haddad v. United States*, 349 F.2d 511, 513 (9th Cir.), *cert. denied*, 382 U.S. 896, 86 S.Ct. 193, 15 L.Ed.2d 153 (1965); *Kastel v. United States*, 23 F.2d 156, 157 (2d Cir.), *cert. denied*, 277 U.S. 604, 48 S.Ct. 600, 72 L.Ed. 1010 (1927).

4. E. g., *Oelke v. United States*, 389 F.2d 668, 671 (9th Cir. 1967), *cert. denied*, 390 U.S. 1029, 88 S.Ct. 1420, 20 L.Ed.2d 286 (1968); *Rothaus v. United States*, 319 F.2d 528 (5th Cir. 1963).

5. E. g., *United States v. Seijo*, 537 F.2d 694, 696 (2d Cir. 1976), *cert. denied*, 429 U.S. 1043, 97 S.Ct. 745, 50 L.Ed.2d 756 (1977); *United States v. Sarullo*, 510 F.2d 1174, 1178 (6th Cir. 1975); *United States v. Gugliaro*, 501 F.2d 68, 70 (2d Cir. 1974); *United States v. Tramunti*, 500 F.2d 1334, 1346 (2d Cir.), *cert. denied*, 419 U.S. 1079, 95 S.Ct. 667, 42 L.Ed.2d 673 (1974).

6. *Reid* was followed in *United States v. American Oil Co.*, 296 F.Supp. 538 (D.N.J.1969).

government. Besides the practical considerations respecting access to proof, to which we referred earlier, we also point to the obvious fact that it is the government which has control over the drafting of indictments. Any burden imposed by the imprecision in the description of separate offenses should be borne by it. To the extent that the *Reid* and *O'Dell* opinions suggest otherwise, we decline to follow them.

■ There remains the question whether the government must prove that two separate crimes are charged by a preponderance of the evidence, by clear and convincing evidence, or beyond a reasonable doubt. Perhaps because most of the few cases discussing the burden of proof have come to appellate courts after a ruling on the double jeopardy claim during a second trial, there is a dearth of authority on that question. Often the discussion has concerned the legal test for determining whether a single offense is involved. Courts have spoken of the required evidence test, the alleged evidence test, the actual evidence test, and the transaction test. *See* Note, *Twice in Jeopardy,* 75 Yale L.J. 262, 269–70 (1965). Several of these formulations have no application to a pretrial determination of a double jeopardy claim, especially a claim that the government has subdivided a single conspiracy. *See Mallah,* 503 F.2d at 985. Their inutility is compounded when the first indictment resulted in a guilty plea and thus produced no evidentiary record with which to make a comparison. There is, however, no need to formulate the legal test for the disposition of the present case more precisely than this: the government must demonstrate that there were two separate criminal agreements to distribute heroin in Pittsburgh during the same period and that Inmon was · a member of both. As to the evidentiary burden, since the fifth amendment double jeopardy privilege is just that—a personal and waivable privilege—rather than an element of the crime, we think it inappropriate to require the government to prove the separateness of the offenses beyond a reasonable doubt. It is possible to argue that, since we are dealing with a significant constitutional right and since the indictment process is controlled by the government, we should hold the government to a standard higher than a preponderance, perhaps to proof by clear and convincing evidence. But such a standard is not constitutionally required. *Cf. Lego v. Twomey,* 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972) (voluntariness of confession may be determined by preponderance of the evidence). Therefore, we hold that, when a defendant has made a non-frivolous showing that a second indictment is for the same offense for which he was formerly in jeopardy, the government must prove by a preponderance of the evidence that there were in fact separate offenses before the defendant may be subjected to trial.

Committing the determination of the double jeopardy claim to the court rather than to the jury, as Judge Biggs pointed out in *Young,* eliminates the possibility of forcing the defendant to make incriminatory statements to the jury about the first offense in his defense to the second charge. The court in *Young,* since it ordered a hearing after, rather than before, the second trial, did not discuss what use could be made of the defendant's testimony in that hearing. In this case the problem becomes acute because the district court may conclude that the trial of the second conspiracy charge should go forward and because, pursuant to our holding in Part II below, the trial of the substantive counts will go forward.

■ May the evidence be used at the second trial, if the defendant chooses to testify at the hearing in support of his contention that there was one conspiracy, rather than two? Conceivably we could hold that the defendant has waived the privilege against self-incrimination and that his testimony may therefore be used against him for all purposes at the subsequent trial. This would be a rather high price to exact for the assertion of. the constitutional privilege against double jeopardy. In *Simmons v. United States,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), the

Supreme Court held that a defendant may testify in a pretrial suppression hearing directed at vindication of fourth amendment rights without fear that his testimony will be used against him at the subsequent trial. Justice Harlan reasoned as follows:

It seems obvious that a defendant who knows that his testimony may be admissible against him at trial will sometimes be deterred from presenting the testimonial proof of standing necessary to assert a Fourth Amendment claim. The likelihood of inhibition is greatest when the testimony is known to be admissible regardless of the outcome of the motion to suppress.

. . . Thus, in this case [the defendant] was obliged either to give up what he believed, with advice of counsel, to be a valid Fourth Amendment claim or, in legal effect, to waive his Fifth Amendment privilege against self-incrimination. In these circumstances, we find it intolerable that one constitutional right should have to be surrendered in order to assert another.

390 U.S. at 392–94, 88 S.Ct. at 975–976.

The reasoning in *Simmons* is compelling, and we follow it in this case. Inmon may not be required, as the cost of litigating what he and his counsel believe to be a valid fifth amendment double jeopardy claim, to waive the fifth amendment privilege against self-incrimination in a later trial. If he testifies in the pretrial double jeopardy hearing, his testimony may not be used against him either on the conspiracy count, if the district court rejects his claim, or on the substantive counts.

## II. THE SUBSTANTIVE CHARGES

█ Inmon moved for the dismissal, as to him, of the entire second indictment—not only the conspiracy charge in Count 1, but also the twenty substantive charges of violations of 21 U.S.C. § 841(a)(1) set out in Counts 2, 3, 4, 7, 8, 11, 15, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 33, and 34. He contends that by his guilty plea to two charges in the first indictment—Count 1 (conspir-

acy) and Count 2 (a single distribution of heroin on October 11, 1975)—he was placed in jeopardy, not only for the conspiracy, but also for the substantive charges of possession and unlawful use of a communication facility on different occasions. This contention is without merit. Each of the twenty substantive counts in the second indictment alleges a separate offense. For this reason the district court properly denied the motion with respect to them.

## CONCLUSION

The order denying Inmon's motion to dismiss Count 1 of indictment No. 76–141 will be reversed and the case remanded for a hearing on that motion in conformity with this opinion. The order denying Inmon's motion to dismiss the remaining counts of indictment No. 76–141 will be affirmed.