**UNITED STATES of America, Plaintiff,**

**v.**

**Stanley NAKONECHNI, Defendant.**

**Crim. No. 76–36–2.**

United States District Court,
M. D. Pennsylvania.

April 20, 1978.

Sal Cognetti, Jr., Asst. U. S. Atty., Scranton, Pa., for plaintiff.

Michael J. Eagen, Jr., Scranton, Pa., for defendant.

## MEMORANDUM

NEALON, Chief Judge.

■ Presently before the court is the question of whether defendant's acquittal of a conspiracy charge in Criminal No. 76–37–2 bars trial on the conspiracy charge here. The procedural history of this prosecution is somewhat complex. Acquittal on the other charges came April 7, 1976.[1] On October 6, 1976, prior to trial on these charges,[2] defendant moved to dismiss the indictment on the ground that there was only one conspiracy to distribute methamphetamine hydrochloride and that further prosecution was barred by the Fifth Amendment protection against being placed twice in jeopardy.[3] The motion to dismiss was denied on October 14, 1976, prior to

---

1. In Criminal No. 76–37–2, defendant was charged in one conspiracy and two substantive counts.

2. Here, defendant was also charged with one conspiracy and two substantive counts.

3. Although defendant's counsel, the Court of Appeals, and this court have, on occasion, spoken broadly of "dismissal of the indictment," the only issue briefed was the question of whether the alleged conspiracies were in fact a single conspiracy, thereby barring trial on the conspiracy count of the indictment. The acquittal on the substantive counts at the earlier trial affords defendant no basis to seek dismissal of the substantive counts here. The transactions alleged in the indictments and for which proof was offered at trial were totally distinct. *See* notes 10 & 12 *infra*. As in *United States v. Inmon*, 568 F.2d 326 (3d Cir. 1977), the existence of an issue as to whether there were two separate conspiracies has no effect on the substantive counts; so long as the substantive counts each constitute "a separate offense," it is of no moment that a double jeopardy claim has been made regarding a conspiracy count. *See Inmon*, 568 F.2d at 333.

trial without opinion. On October 15, 1976, defendant was convicted on the conspiracy count and two substantive counts of possession of methamphetamine hydrochloride with intent to distribute. *See* 18 U.S.C. § 371; 21 U.S.C. § 841(a)(1). Defendant's double jeopardy argument was renewed in the post-trial motion filed on his behalf. By memorandum and order dated March 31, 1977, the claim that this conspiracy prosecution was barred was again rejected on the ground that there was no inconsistency between the conviction here and the verdict of acquittal on the other conspiracy charge because a separate conspiracy had been alleged and proven at trial. Defendant appealed. On November 28, 1977, during the pendency of this appeal, the Court of Appeals held in another case that, when a defendant makes a nonfrivolous claim that allegedly separate conspiracies were in fact the same conspiracy, a pretrial hearing must be held at which the government has the burden of demonstrating, by a preponderance of evidence, that there were separate agreements to violate the law. *See United States v. Inmon*, 568 F.2d 326 (3d Cir. 1977).[4] Subsequently, in an unreported per curiam opinion, a different panel of the Court of Appeals[5] remanded to this court for consideration of the double jeopardy claim in light of *Inmon* and directed that a transcript of the earlier trial be supplied defendant to assist in his argument of the double jeopardy motion. *See United States v. Nakonichni*, No. 77–1683 (3d Cir., Dec. 27, 1977).[6] In a footnote, the Court of Appeals rejected defendant's other claims, and thereby, it would appear, affirmed defendant's convictions on the substantive counts.

After receiving briefs, I scheduled the matter for a hearing on the double jeopardy motion, and the hearing was held April 7, 1978.[7] In addition to relying on the record of the two trials, the government called as witnesses a federal undercover investigator involved in both cases, and one of the chief conspirators, Steven Franchette.[8] Defendant called two persons connected with the alleged conspiracies. Upon consideration of the records of the two trials and the evidence offered at the hearing, the motion to dismiss the conspiracy count of the indictment here on the ground of double jeopardy will be denied.

 In reviewing the evidence developed at trial and at the suppression hearing on the issue of whether there were in fact separate conspiracies, the central question is whether there were separate agreements to distribute methamphetamine hydrochloride. *See United States v. Young*, 503 F.2d 1072, 1076 (3d Cir. 1974). A defendant involved in a single agreement cannot be tried on two conspiracies merely because the indictments allege different overt acts or objectives. *See Braverman v. United States*, 317 U.S. 49, 63 S.Ct. 99, 87 L.Ed. 23 (1942); *United States v. Mayes*, 512 F.2d 637, 642 (6th Cir.), *cert. denied*, 422 U.S. 1008, 95 S.Ct. 2629, 45 L.Ed.2d 670 (1975). However, participation by a single defendant in separate agreements to violate the law can result in more than one conspiracy charge. *See, e. g., United States v. Papa*, 533 F.2d 815, 821–22 (2d Cir.) (defendant directed two conspiracies), *cert. denied*, 429 U.S. 961, 97 S.Ct. 387, 50 L.Ed.2d 329

---

4. However, as stated in *United States v. Young*, 503 F.2d 1072 (3d Cir. 1974), a decision upon which *Inmon* relied, there may be instances when a decision on a motion to dismiss on double jeopardy grounds should be deferred until after trial. *Id.* at 1077.

5. Judge H. Curtis Meanor of the District of New Jersey sat by designation on both panels and joined in the unanimous decisions.

6. The order is reported at 566 F.2d 1170. The correct spelling of defendant's name is "Nakonechni." In the indictment, however, the "e" in defendant's name was replaced by an "i".

7. Technically, a preliminary determination of whether defendant had made a showing of nonfrivolousness under *Inmon* was not made express by the court. However, my review of the Court of Appeals remand and defendant's double jeopardy contentions indicated to me that a hearing should be conducted.

8. Franchette pled guilty in Criminal No. 76–37, the indictment upon which defendant was found innocent.

(1976); *United States v. Moore*, 522 F.2d 1068, 1078 (9th Cir. 1975) (defendant acted as "fence" for two conspiracies), *cert. denied*, 423 U.S. 1049, 96 S.Ct. 775, 46 L.Ed.2d 637 (1976).

The evidence at the hearing and the trials establishes, under the *Inmon* standard of preponderance of evidence, that there were separate agreements. One network for distributing methamphetamine hydrochloride (also described in the testimony and in this memorandum as methamphetamine or "speed") was organized sometime in 1972 by Robert Day, became known by law enforcement personnel as the "Day conspiracy," and eventually resulted in the indictment here, which charges five persons with conspiracy, distribution of, and possession with intent to distribute methamphetamine between July 1972 and September 1975. Defendant was charged with conspiracy and two counts of possession with intent to distribute. One person, Claude Barbant, was named as an unindicted co-conspirator. In 1972, when the conspiracy was originally formed, Robert Day and Bruce Lindemuth began making purchases from a Claude Barbant in Canada. In October of that year, Day, in the company of Susan Heffinger, met with defendant at defendant's home in Carbondale, Pa. Defendant agreed to "deal speed" for Day at that time. In March 1973 James Dellesandro, Robert Jackson, and William Dixon also joined the Day network. Other evidence adduced at trial further connected defendant to Day's operation. In December 1973, defendant visited the home of Steven Franchette, where defendant stated that he was "dealing" for Day and had "speed" to sell.[9] According to the testimony of the federal undercover agent, the drugs sold by the Day network were of poor quality and so recognized "on the street."[10]

At about the same time that the Day network was in operation, another network for the distribution of methamphetamine was being organized. This second network, which began in November 1972, became known as the "Franchette conspiracy," and eventually resulted in the indictment of 15 persons (including defendant) for conspiracy, distribution, and possession with intent to distribute methamphetamine between November 1972 and December 1975. Defendant was charged with conspiracy and two counts of possession with intent to distribute. Five other individuals were named as unindicted co-conspirators. *With the single exception of defendant, the conspirators in this indictment were neither named nor indicted as conspirators in the Day network. And at trial there was no evidence that any person participated in both networks, except for the evidence that defendant sold drugs for both.* See *United States v. Franchette*, Criminal No. 76–37 (M.D.Pa., filed Mar. 8, 1976). Franchette began the network with two other individuals in Throop, Pa.; Franchette supplied the money, Robert Wiktor possessed knowledge of distribution, and Thomas Borick had the initial supply connection in Canada, Ellen Washo. The initial group was joined by John Caines, Daniel Bernidini, and Charles Morris. When the Canadian source "dried up," large amounts of speed were obtained in February 1974 from Henry Washington and Michael Marrazzo in Philadelphia. In 1975 methamphetamine was purchased in Philadelphia from two other conspirators, George Thornton (a/k/a George Scott) and Charles Spicer. There was testimony at trial from Washington that defendant joined the Franchette network in late 1973 or early 1974. John Caines gave similar testimony; after the source of supply shifted to Philadelphia, defendant became one of the distributors for Franchette. According to the

---

**9.** As will be discussed infra, Franchette had his own network for distributing methamphetamine.

**10.** At trial defendant was found guilty on the Day indictment of conspiracy and two substantive counts of possession with intent to distribute. The two substantive counts of the Day indictment involved transactions with Day and Susan Heffinger in October 1972 in Carbondale, Pa. and with James Dellesandro in August 1974 in Scranton, Pa. As a result of this conviction, defendant has filed the post-trial motion presently before the court.

federal undercover agent, the drugs obtained by the Franchette network during this entire period of time and resold was of a high quality and visibly different from the Day drugs. At trial there was evidence from which the jury could have concluded that defendant participated in the conspiracy and had possessed methamphetamine for distribution.[11] Defendant was, nevertheless, acquitted on all charges in connection with the Franchette conspiracy.[12] This trial, of course, actually occurred prior to defendant's trial on the Day indictment, the indictment against which defendant filed the motion to dismiss.

While the evidence discussed supra would clearly support a determination that there were separate agreements, additional and highly material evidence was also developed at the hearing by testimony of Steven Franchette.[13] When I questioned Franchette on his familiarity with persons connected with the Day network, his responses strongly affirmed the distinctness of the Franchette and Day networks.[14] Franchette knew both Day and defendant, and he stated that defendant bought methamphetamine from him.[15] Two other indictees here, Lindemuth and Dixon, were not, however, known to Franchette at all. The fifth indictee in this case, Jackson, although known to Franchette, had no dealings with the Franchette network. Franchette testified he was only vaguely familiar with Barbant, the unindicted co-conspir-

ator in the case and Day's initial supplier in Canada. Finally, Heffinger and Dellesandro, two persons closely connected with the Day network who also testified at trial, were completely unknown to Franchette.[16] Clearly, although there were some limited exchanges of methamphetamine between the groups, there were, in fact, separate networks and separate agreements to distribute methamphetamine. There were no persons in the Day network, other than defendant, who bought drugs through Franchette. Mere dealing for two drug networks does not insulate a defendant from charges that he entered both agreements. *See Papa,* 533 F.2d at 821–822; *Moore,* 522 F.2d at 1078.

Inasmuch as there were two agreements to distribute methamphetamine, the trial here on a conspiracy count is not barred by defendant's earlier acquittal. There were, of course, some similarities between the two conspiracies. Both involved the distribution of methamphetamine hydrochloride; for a brief time, both had sources in Canada; both were centered in the Middle District of Pennsylvania; and both networks operated approximately during the same period of time. There, however, the similarities end. The drugs which the two networks distributed had different sources of supply in Canada and were radically different in quality. There was essentially no overlap of personnel,[17] i. e. Franchette led one network and

---

11. While not crucial to my determination that there were two separate agreements, I conclude, under the preponderance of evidence test, that defendant did participate in the Franchette conspiracy as well as the Day conspiracy. Thus, defendant became a part of two separate groups which were operating independently of each other.

12. The two substantive counts, of which defendant was acquitted, were based on the testimony of John Caines that he delivered "speed" to defendant on March 15, 1974, in Throop, Pa., and on March 30, 1974, in Moscow, Pa.

13. In the usual *Inmon* proceeding testimony from a chief conspirator may not be available.

14. Robert Day is apparently a fugitive, and, therefore, unavailable to either the government or defendant.

15. Caines testimony to that effect was apparently rejected by the jury in the earlier trial. *See* note 12 *supra.*

16. Counsel for defendant at the hearing showed that Franchette was very familiar with Wiktor, a principal witness in defendant's trial. Wiktor testified that, when defendant allegedly made an approach to Franchette to act as a distributor for him, defendant made a highly relevant and significant admission, viz. that he was dealing for Day. It is not surprising that Wiktor was known well to Franchette; Wiktor was, for a time, an active participant in the Franchette network.

17. Indeed, inasmuch as defendant was acquitted on the Franchette conspiracy charge, it could be argued that there was *no* overlap. Of

Day the other. Since there were separate agreements to distribute methamphetamine, defendant's trial and subsequent conviction here were not barred by double jeopardy. *See Papa,* 533 F.2d at 821–22; *Moore,* 522 F.2d at 1078; *United States v. Westover,* 511 F.2d 1154, 1156 (9th Cir.), *cert. denied,* 422 U.S. 1009, 95 S.Ct. 2633, 45 L.Ed.2d 673 (1975); *United States v. Sarullo,* 510 F.2d 1174 (6th Cir.), *cert. denied,* 423 U.S. 837, 96 S.Ct. 64, 46 L.Ed.2d 55 (1976); *United States v. Wilshire Oil Co. of Texas,* 427 F.2d 969, 975–77 (10th Cir.), *cert. denied,* 400 U.S. 829, 91 S.Ct. 58, 27 L.Ed.2d 59 (1970); *United States v. Edwards,* 366 F.2d 853, 872 (2d Cir. 1966), *cert. denied sub nom. Parness v. United States,* 386 U.S. 919, 87 S.Ct. 882, 17 L.Ed.2d 790 (1967). *Compare United States v. Palermo,* 410 F.2d 468 (7th Cir. 1969); *United States v. Cohen,* 197 F.2d 26 (3d Cir. 1952).

At the hearing defendant attempted to show that there was interaction between the networks and awareness of each other's members. The showing that there existed a slight degree of interaction and mutual awareness is, however, far short of that needed to overcome the overwhelming evidence that there were, in fact, separate agreements. In defendant's original brief in support of his post-trial motion, defendant argued that, since only "slight evidence" is required to connect a defendant to a conspiracy,[18] only minimal evidence is needed to show that the Franchette and Day networks were one single conspiracy. Under *Inmon,* however, the test is whether the government can show by a preponderance of evidence that there were, in fact, separate conspiratorial agreements. This test has been satisfied.

Defendant's motion to dismiss the conspiracy count of this indictment will be denied.

course, a double jeopardy argument is not barred merely because a defendant is acquitted on the first charge.

18. A defendant's participation in a conspiracy must be established beyond a reasonable

doubt; "slight evidence" is merely the standard of review on appeal after a verdict of guilty. *United States v. Cooper,* 567 F.2d 252 (3d Cir. 1977).