**UNITED STATES of America,
Plaintiff–Appellant/Cross–Appellee,**

v.

**William K. FRAZIER and Mark B. De-Busk,
Defendants–Appellees/Cross–Appellants.**

Nos. 88–5392, 88–5528.

United States Court of Appeals,
Sixth Circuit.

Argued May 22, 1989.

Decided July 26, 1989.

Rehearing and Rehearing En Banc
Denied Sept. 12, 1989.

---

880

John W. Gill, Jr., U.S. Atty., Chattanooga, Tenn., Robert E. Simpson, Asst. U.S. Atty., Knoxville, Tenn., J. Edgar Schmutzer, Asst. U.S. Atty., Greeneville, Tenn., Joseph C. Wyderko (argued), Dept. of Justice, Crim. Div., Appellate Section, Washington, D.C., for U.S.

Gordon Ball (argued), Newport, Tenn., for William K. Frazier.

Bob Jessee (argued), Johnson City, Tenn., for Mark B. DeBusk.

Before MERRITT and NELSON, Circuit Judges; and LIVELY, Senior Circuit Judge.

LIVELY, Senior Circuit Judge.

This appeal and cross-appeal require us to determine whether principles of collateral estoppel prevent a second trial in a prosecution under a multicount indictment where a jury has acquitted the defendants on some counts and has been unable to agree on other counts.

I.

A.

In 1982 William Frazier was president of a bank in Bristol, Tennessee. Mark DeBusk owned a jewelry store in Bristol and maintained an account at Frazier's bank. In March 1982 DeBusk married Frazier's daughter. In 1982 DeBusk also began operating a wholesale jewelry establishment in Bristol and took steps to incorporate the business. This business also maintained an account at the Bristol bank. He hired Randall Sargent to work in the jewelry store and Sanford Nelson to work for the wholesale business.

Beginning in January 1982 DeBusk wrote checks on the jewelry store account that created overdrafts. Since DeBusk was a "preferred customer" with an established line of credit, the bank honored the checks. By July 1982 the jewelry store account was overdrawn by $156,665. On July 23, 1982 DeBusk signed a note to the Bristol bank for $138,500 as president of the jewelry store, pledging inventory, fixtures and accounts receivable as collateral. The same day Frazier, as president of the bank, assigned the note to another bank with himself as guarantor. The cashier's check for $138,500 from the other bank was deposited in the jewelry store account. Thus the records of the Bristol bank did not reflect the fact that its funds were used to cover the large overdraft. Also on July 23 Nelson signed a promissory note to the bank for $24,500 after being told by Frazier that he, Nelson, would not be responsible for repayment of the loan. The proceeds were not delivered to Nelson; instead, they were used to cover further the jewelry store's overdraft. In October 1982 Frazier used the proceeds of a $23,000 loan from the Bristol bank to Sargent to cover an overdraft of the wholesale business. Frazier resigned as president of the bank in November 1982 after advising his board of directors of the unpaid $138,500 note assigned to the other bank.

B.

Frazier and DeBusk were indicted in December 1986. The indictment contained 52 counts. It alleged a course of conduct in which DeBusk issued checks on his two accounts, knowing that there were insufficient funds to pay them, and Frazier willfully misapplied bank funds to cover the checks and caused false entries to be made in the bank's records to conceal the overdrafts. It charged that Frazier personally monitored the DeBusk accounts, that he exceeded his loan authority in one or more devices employed to cover the overdrafts,

and that he failed to inform the bank's board of directors of the condition of the accounts and of loans made to cover the overdrafts.

Count 1 charged the defendants Frazier and DeBusk, and Nelson and Sargent as unindicted co-conspirators, with conspiracy to misapply funds of a federally insured bank and to make false entries in the records of the bank. The indictment listed 35 overt acts, including checks drawn on the two accounts controlled by DeBusk that resulted in overdrafts in those accounts and the three loans described above. The jury acquitted both defendants under count 1.

Counts 2 through 47 charged that Frazier, aided and abetted by DeBusk, misapplied bank funds by directing employees to pay forty-six checks that created overdrafts in the DeBusk jewelry store account. The indictment alleged that both defendants knew that the account did not contain sufficient funds to cover the checks. These 46 checks were issued and paid between March 27 and July 20, 1982. Seven of the checks were listed as overt acts in the conspiracy count. The jury acquitted both defendants under counts 2 through 18, but was unable to agree on a verdict with respect to counts 19 through 47.

Count 48 charged that Frazier, aided and abetted by DeBusk, misapplied funds of the bank by causing the $24,500 loan (described in overt acts 22 and 27) to be disbursed to unindicted co-conspirator Nelson. It alleged that Frazier and DeBusk knew the loan was not for Nelson's benefit. Instead the proceeds were deposited in one of DeBusk's accounts to conceal its overdraft condition. Count 49 charged that Frazier, aided and abetted by DeBusk, caused a false entry to be made in the bank records with respect to the "Nelson loan" of $24,-500 with intent to deceive the F.D.I.C., bank examiners, and others.

Count 50 charged that Frazier, aided and abetted by DeBusk, misapplied bank funds on July 23, 1982, by wrongfully crediting the proceeds of the $138,500 loan (described in overt acts 23–26) to conceal an overdraft in a DeBusk account.

Count 51 charged that Frazier misapplied bank funds in October 1982 by using the proceeds of the $23,000 loan nominally made to unindicted co-conspirator Sargent (described in overt acts 33–35) to cover an overdraft in a DeBusk account. Count 52 charged Frazier with causing false entries to be made in connection with the "Sargent loan."

II.

A.

After receiving the jury's verdict the district court dismissed counts 1, 2 through 18, and 48, and declared a mistrial as to the remaining counts. Both defendants then made motions for acquittal on all the remaining counts. The district court granted the defendants' motion in part, dismissing counts 32, 41, 44, 49 and 50. The court denied the motions as to the other counts and set a date for retrial on counts 19 through 31, 33 through 40, 42 and 43, 45 through 47, and 51 and 52. In its opinion the district court applied principles of collateral estoppel as set forth in *Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970). The court concluded that a guilty verdict on counts 32, 41, 44, 49 and 50 at a second trial "would indeed require that an issue of fact necessarily determined favorably to the defendants at the first trial now be decided in favor of the government." On the other hand, the court found no such bar to a second trial of the remaining counts "since a rational jury could have reached its verdict of not guilty on Counts 1 through 18 and 46 upon issues other than that which the defendants seek to foreclose from consideration."

B.

Both the defendants and the government appealed from the court's order. The defendants filed a motion to dismiss the appeal, arguing that there is no authority for the government to appeal from an acquittal. The motion to dismiss was referred to the hearing panel.

18 U.S.C. § 3731 authorizes an appeal by the government in a criminal case from "a decision, judgment, or order of a district court dismissing an indictment or information ... as to any one or more counts" except where the double jeopardy clause prohibits further prosecution. The Supreme Court has construed § 3731 to remove all statutory barriers to government appeals from orders dismissing counts of an indictment unless the double jeopardy clause prevents a retrial. *United States v. Wilson*, 420 U.S. 332, 339, 95 S.Ct. 1013, 1019, 43 L.Ed.2d 232 (1975). In the present case the court did not evaluate the evidence following a hung jury mistrial and "determine [ ] that it was legally insufficient to sustain a conviction." *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 572, 97 S.Ct. 1349, 1355, 51 L.Ed.2d 642 (1977). Such a determination would have precluded retrial. Instead, the district court's order dismissed particular counts of the indictment solely on collateral estoppel grounds. The government's appeal is limited to that portion of the order, and does not address any counts in which the jury found the defendants not guilty. The appeal is authorized by § 3731. The motion to dismiss the government's appeal is denied.

### III.

In *Ashe v. Swenson* the Supreme Court prescribed the steps to be taken by courts applying principles of collateral estoppel in criminal cases:

> The federal decisions have made clear that the rule of collateral estoppel in criminal cases is not to be applied with the hypertechnical and archaic approach of a 19th century pleading book, but with realism and rationality. Where a previous judgment of acquittal was based upon a general verdict, as is usually the case, this approach requires a court to "examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from considera-

tion." The inquiry "must be set in a practical frame and viewed with an eye to all the circumstances of the proceedings." *Sealfon v. United States*, 332 U.S. 575, 579 [68 S.Ct. 237, 239, 92 L.Ed. 180 (1948)].

397 U.S. at 444, 90 S.Ct. at 1194 (footnote omitted).

■ The government makes an argument that would, if accepted, relieve the court of the necessity of following the prescribed procedures in the present case. The government contends that collateral estoppel applies only in situations such as *Ashe*, where the state sought to prosecute a defendant at successive trials in which the same evidence that led to an acquittal at the first trial would necessarily form the basis of a conviction at a later trial. The government maintains that collateral estoppel does not apply where a defendant is charged in a multicount indictment and a jury acquits on some counts and is unable to agree on other counts.

The government bases its argument on the theory that a verdict such as that described above and as rendered in this case is inconsistent. Collateral estoppel is based on an assumption that the first jury acted rationally in acquitting the defendant. If, at a single trial, a jury acquits on some counts and there is no logically consistent way for it to have failed to acquit on others, the jury has reached inconsistent results. Under these circumstances, the government asserts, collateral estoppel principles "are no longer useful," quoting *United States v. Powell*, 469 U.S. 57, 68, 105 S.Ct. 471, 478, 83 L.Ed.2d 461 (1984). In *Powell* the Supreme Court rejected an exception to its holding in *Dunn v. United States*, 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356 (1932), "that a criminal defendant convicted by a jury on one count could not attack that conviction because it was inconsistent with the jury's verdict of acquittal on another count." 469 U.S. at 58, 105 S.Ct. at 473. The exception relied upon by the court of appeals in *Dunn* was based upon the particular provisions of 21 U.S.C. § 843(b), a statute that prohibits use of communications facilities "in committing or

in causing or facilitating" illegal drug activities. The court of appeals reversed the conviction on collateral estoppel grounds because the jury acquitted the defendant of the drug-connected act, but convicted him of facilitating commission of the same act. The court reasoned that "an acquittal on the predicate felony necessarily indicated that there was insufficient evidence to support the telephone facilitation conviction...." *Id.* at 61, 105 S.Ct. at 474.

The Supreme Court stated that it would be unworkable to attempt to review inconsistent verdicts on an individualized basis. Rather, each count on which a defendant is convicted should be reviewed independently for sufficiency of the evidence. This protects the defendant from wrongful conviction without involving the reviewing court in the impossible task of determining which of the inconsistent verdicts the jury "really meant." *Id.* at 68, 105 S.Ct. at 478.

The basis of the *Dunn–Powell* rule is the fact that a single jury has reached inconsistent results in a case; "once that is established principles of collateral estoppel —which are predicated on the assumption that the jury acted rationally and found certain facts in reaching its verdict—are no longer useful." *Id.* The problem with application of this rule to the present case is that the jury verdict is not necessarily inconsistent. Certainly acquittal on the conspiracy charge is not necessarily inconsistent with an inability to agree on some of the substantive charges; the elements of the offenses are different, requiring different factual findings. The same is true with respect to the acquittals on counts 2 through 18 and 48; these results are not necessarily inconsistent with a hung jury on the remaining counts.

In *Dunn* and *Powell* the first jury convicted on at least one of the charges. To convict the jury had to find certain facts— elements of the offense—beyond a reasonable doubt. An acquittal on a related charge, such as the predicate offense in *Powell*, clearly would be inconsistent. No such inconsistency is necessarily present, however, when a jury acquits on some charges and fails to agree on others. Both the acquittal and the failure to agree could result from a number of factors, none of which makes the verdict inconsistent or the jury's actions irrational. For example as is possible with this case, the jury may have believed that the government presented insufficient proof that the defendants intended to defraud the bank on the acquitted counts; however, proof of intent with respect to the remaining counts may have been strong enough to convince some but not all of the jurors.

We do not believe that *Powell* supports the government's argument that collateral estoppel may never be applied to prevent retrial of charges on which the first jury fails to agree. There the convicted defendant's reliance on inconsistency between the verdict of guilty on one or more counts and not guilty on related counts in seeking *reversal of his conviction* involved the actions of a single jury. The Court held that the guilty verdict cannot be reviewed on the basis of its internal inconsistency; it must be reviewed for sufficiency of the evidence. The defendants in the present case do not seek reversal of a conviction on the ground that a guilty verdict is inconsistent with other findings of the same jury. They seek to prohibit a second jury from considering the hung jury counts on the ground that such consideration would require a verdict of guilty to be based on evidence that necessarily formed the basis of not guilty findings on other counts at the first trial. If they can show that this is indeed the case, then principles of collateral estoppel will preclude a subsequent trial of those counts.

We agree with the court in *United States v. Mespoulede*, 597 F.2d 329 (2d Cir.1979), that when a jury acquits on some counts in a multicount indictment, principles of collateral estoppel may preclude retrial of charges upon which the jury was unable to agree at the earlier trial. *Id.* at 336.

IV.

In applying principles of collateral estoppel our ultimate determination must be whether the "single rationally conceiva-

ble issue in dispute" was the issue on which the jury foun 1 for the defendants on each acquitted charge at the first trial. *Ashe v. Swenson*, 397 U.S. at 445, 90 S.Ct. at 1195. Collateral estoppel can result either in prohibiting the introduction of particular evidence in a subsequent trial, see *Rice v. Marshall*, 816 F.2d 1126 (6th Cir. 1987), or in precluding a subsequent prosecution. *Ashe v. Swenson*, supra. In this case the defendants argue that application of principles of collateral estoppel preclude a second trial in which the government would attempt to convict on the charges upon which the first jury was unable to agree.

### A.

▆ The acquittal under count 1—the conspiracy count—has no preclusive effect. It is settled that a conspiracy to commit a crime is a distinct offense from the commission of the crime. This is so even if commission of the crime is listed as an overt act in the conspiracy count. *United States v. McCullah*, 745 F.2d 350, 355 (6th Cir.1984). The first essential element of a criminal conspiracy is an agreement to violate the law. The jury's verdict on count 1 could rationally have been based on a finding that the defendants and co-conspirators did not agree to a scheme to misapply the bank's funds and falsify its records. In such a case, following the court's instructions, the jury could have acquitted without ever considering whether Frazier and De-Busk committed the acts charged in the remaining counts, whether listed as overt acts or not. Thus, insofar as count 1 is concerned, the acquittal did not create a situation in which "an issue essential to the prosecution's case in the second trial has necessarily been decided for the defendant[s] in the first trial." *United States v. Bowman*, 609 F.2d 12, 17 (D.C.Cir.1979).

### B.

▆ Counts 2 through 47 charged Frazier with willful misapplication of bank funds, 18 U.S.C. § 656, and with causing such funds to be misapplied, 18 U.S.C. § 2(b). Section 656 creates a specific intent crime—the misapplication must be done with the specific intent to defraud or injure the bank. The district court instructed the jury that mere payment of a check that created or increased an overdraft is not sufficient to show a violation if the officer causing the payment had no intent to defraud or injure the bank. The jury was also instructed that the defendants could not be found guilty of misapplication if the board of directors or other bank group approved the payment. In addition, the court instructed the jury that good faith is a defense to a willful misapplication charge. The defendants did not deny that the checks were drawn and paid when the accounts were overdrawn. Frazier denied that he had personal responsibility for the DeBusk accounts and testified that he first became aware of the size of the jewelry store overdraft in June 1982.

The defendants argue that the jury necessarily based their acquittal under counts 2 through 18 on a finding that Frazier lacked specific intent to defraud or injure the bank. Since all the overdraft checks in counts 2 through 47 are similar and appear to have been chosen at random by the government, the defendants contend that the finding of lack of specific intent to defraud as to checks 2 through 18 necessarily applies as well to checks 19 through 47. DeBusk adds that, following the court's instruction, the jury was required to acquit him as an aider and abettor once it determined that Frazier was not guilty.

As this court stated in *United States v. Sarullo*, 510 F.2d 1174, *cert. denied*, 423 U.S. 837, 96 S.Ct. 64, 46 L.Ed.2d 55 (1975), an argument of this type "ignores the truism that 'criminal intent,' being a state of mind, may be determined only from the attendant facts and circumstances to which it bears a direct ralationship. One may possess a criminal intent in one framework of facts but be perfectly innocent in another." *Id.* at 1177. If transactions constituting the basis for one count are distinct and separate from those forming the basis for another count, "it cannot reasonably be said" that the jury's finding in the first count on the issue of criminal intent is

conclusive of that issue in the other count. *Id.*

Assuming the jury found that Frazier lacked the required specific intent to defraud in causing the checks listed in counts 2 through 18 to be paid, an examination of the transcript reveals no evidence that would require a similar finding of lack of intent with respect to the checks listed in counts 19 through 47. The counts 2 through 18 checks were paid between March 27 and May 10, 1982. The counts 19 through 47 checks were paid between May 11 and July 20, 1982. Each check payment represented a different transaction. There was disputed evidence concerning when Frazier became aware of the magnitude of the overdraft, whether he did in fact authorize or cause payment of each check, and when the bank's directors became aware of the condition of DeBusk's accounts. The latter consideration would affect a decision on whether Frazier had tacit board approval to permit the overdrafts and thus to authorize payment of an "insufficient funds" check from bank funds.

We are unable to say that the jury's treatment of the two sets of checks was either inconsistent or irrational. The jury could reasonably have found from disputed evidence that Frazier lacked the required specific intent up to May 10 but could have been unable to agree with respect to his actions after that date. Thus any possible jury finding on the issue of criminal intent in causing payment of the checks between March 27 and May 10 is not conclusive on the issue of criminal intent when causing payment of checks after that date.

The defendants argue that their acquittal under counts 2 through 18 also precludes a retrial on counts 49 through 52. Even if the jury acquitted Frazier on counts 2 through 18 on the basis of a finding of no specific intent to defraud, that verdict does not prevent his retrial on counts 49 through 52. These counts related to the three incorrectly recorded loans in July and October 1982 the proceeds of which were used to conceal the DeBusk overdrafts. The facts of these three transactions are entirely different from those underlying counts 2 through 18, and *Sarullo* controls.

## C.

The jury also acquitted the defendants on count 48. This count charged that the July 23 loan to Nelson constituted a misapplication of bank funds. There was a conflict in the testimony about this transaction. If the jury accepted testimony of Frazier and an attorney employed by DeBusk during 1982 it could have acquitted the defendants on a finding that Frazier lacked specific intent. However, such a finding would have no bearing on the right of the government to retry the defendants on counts 19 through 47 or count 50. Count 50 involved the $138,500 loan, and even though this loan took place on the same day as the Nelson loan, the facts surrounding the two transactions were entirely different. For example, the forms of the two loans are distinct. The $138,500 loan involved an assignment, but the Nelson loan did not. A finding of good faith with respect to the Nelson loan had no necessary relevance to the $138,500 "other bank" loan. A jury at a subsequent trial could consider count 50 without regard to any of the evidence relied upon in seeking a conviction under count 48 at the first trial.

We reach the same conclusion with respect to counts 51 and 52. DeBusk was not charged in these counts involving the $23,000 loan to Sargent, allegedly used to cover and conceal an overdraft in one of the DeBusk accounts. Count 51 charged Frazier with misapplication of bank funds and count 52 charged him with causing false entries in the same transaction. None of the counts on which Frazier was acquitted was related in any way to the Sargent loan. Counts 51 and 52 could be considered by a subsequent jury without reference to any evidence produced at the first trial in seeking convictions under count 48.

The district court correctly held that the acquittal on count 48 precludes a second trial on count 49. Both counts concerned the July 23 loan to Nelson; count 48 charged misapplication of funds and count

49 charged false entries. Because the parties essentially agreed that Frazier disbursed a loan to Nelson that was used for DeBusk's benefit, the only disputed evidence focused on the issue of intent to defraud. A jury could not conclude that the defendants wilfully caused false entries to be made with respect to that loan without also finding that the defendants wilfully and knowingly misapplied bank funds by using the loan proceeds in the manner described in count 48. The jury was instructed that recording a good faith transaction as it actually occurs does not constitute a false entry. The defendants have carried their burden "to prove by convincing and competent evidence that the fact sought to be foreclosed was necessarily determined by the jury against the government in the prior trial." *United States v. Benton*, 852 F.2d 1456, 1466 (6th Cir.), *cert. denied sub nom. Campbell v. United States*, — U.S. ——, 109 S.Ct. 555, 102 L.Ed.2d 582 (1988).

To summarize, we conclude that acquittal on count 48 precludes retrial on count 49. However, acquittal on counts 2 through 18 and count 48 does not preclude further prosecution of counts 19 through 47 and counts 50 through 52.

## V.

To this point we have considered principles of collateral estoppel as they apply to both Frazier and DeBusk. However, DeBusk was indicted only as an aider and abettor. He argues that acquittal on the conspiracy count precludes a retrial of all substantative counts on which the jury failed to agree. DeBusk contends that the jury necessarily found no agreement between him and Frazier. The two elements of aiding and abetting are (1) an act by the defendant that contributes to commission of the crime and (2) an intention to aid in the commission of the crime. There is no requirement that there be an agreement in order to convict of aiding and abetting. Conspiracy to commit a crime and aiding and abetting in its commission are distinct offenses. *United States v. Townes*, 512 F.2d 1057 (6th Cir.), *cert. denied*, 423 U.S. 846, 96 S.Ct. 84, 46 L.Ed.2d 67 (1975). As

the court stated in *United States v. Bright*, 630 F.2d 804, 813 (5th Cir.1980), there is a difference between a conspiratorial agreement and the "community of unlawful intent" required between an aider and abettor and a principal.

In *United States v. Austin*, 529 F.2d 559 (1976), this court used language that appears to blur this distinction. Austin was convicted of both conspiracy to violate laws prohibiting bribery and of aiding and abetting the offense of paying a bribe to a public official. This court found the conviction on both charges impermissible because the indictment was drawn in such a way that it required a finding of the same agreement to commit the substantive offense as was relied upon to establish the conspiracy. *United States v. Fife*, 573 F.2d 369, 372–73 (6th Cir.1976), *cert. denied sub nom. Klein v. United States*, 430 U.S. 933, 97 S.Ct. 1555, 51 L.Ed.2d 777 (1977). Under these circumstances, the *Austin* court applied a "same evidence" test to determine that the defendant had been convicted twice for the same act. 529 F.2d at 562. *Austin* has no application where the indictment does not require proof of an agreement for conviction on substantive counts. The indictment in the present case does not contain the *Austin* infirmity. Thus, even if the jury did acquit on count 1 because it found no agreement between Frazier and DeBusk, that finding would not preclude a further prosecution of DeBusk on the remaining counts.

DeBusk also argues that the acquittal on counts 2 through 18 and 48 precludes a retrial of the hung jury counts. He contends that the jury necessarily found that Frazier did not have the required specific intent to defraud the bank when he caused the overdraft checks to be paid and caused the proceeds of the Nelson loan to be credited to the jewelry store account. Since DeBusk's role in all these transactions was the same as in the others for which he was charged as an aider and abettor, he contends that further prosecution is prohibited.

We reject this argument for two reasons. First, DeBusk cannot benefit from a find-

ing that Frazier acted without specific intent to defraud. If he performed an act that contributed to a misapplication of bank funds, with the specific intent to defraud, it makes no difference whether or not the principal who actually caused the misapplication of funds shared the criminal intent. The Supreme Court held in *Standefer v. United States,* 447 U.S. 10, 24, 100 S.Ct. 1999, 2008, 64 L.Ed.2d 689 (1980), that the prior acquittal of the actual perpetrator of an offense does not estop the government from prosecuting an aider and abettor. Since the district court erroneously charged the jury in the present case that it could not convict DeBusk without first finding Frazier guilty, DeBusk actually received the benefit of an instruction to which he was not entitled.

*Sarullo* provides the second reason for rejecting this argument. None of the counts to be retried is factually congruent with counts 2 through 18 or 48. All of the remaining counts apply to discrete transactions that are separate and distinct from those covered by counts 2 through 18 and 48.

## CONCLUSION

In summary, this is a proper case for application of collateral estoppel principles. After conducting the analysis prescribed in *Ashe v. Swenson,* we conclude that retrial on count 49 is precluded. However, prosecution may go forward on counts 19 through 47 and counts 50 through 52. With respect to these counts, in each acquittal "a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration." *Ashe v. Swenson,* 397 U.S. at 444, 90 S.Ct. at 1194.

The judgment of the district court is affirmed in part and reversed in part. The case is remanded for further proceedings consistent with this opinion.