996 F.2d 1218
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Mark Lance JONES, Defendant-Appellant.
 No. 92-3737.
 United States Court of Appeals, Sixth Circuit.
 June 21, 1993.
 
 Before MARTIN and BOGGS, Circuit Judges, and KRUPANSKY, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendant Mark Lance Jones appeals his jury conviction for attempted possession, with intent to distribute, of more than 500 grams of cocaine, in violation of 21 U.S.C. § 846. On appeal, Jones contends that there was insufficient evidence to support his conviction, that he was denied effective assistance of counsel at trial, and that the district court erred by instructing the jury on aiding and abetting. After careful consideration, we affirm the conviction.
 
 
 2
 * On October 8, 1988, members of the Drug Enforcement Agency, working with the Dayton Police Department, intercepted a Federal Express package addressed to Mary Davis of 318 Anna Street in Dayton, Ohio. Pursuant to a valid search warrant, the package was opened and found to contain a kilogram of cocaine. The officers substituted a book for the cocaine, resealed the package, and prepared a controlled delivery of the package to 318 Anna Street.
 
 
 3
 Immediately after the package was delivered, and pursuant to a valid search warrant, the officers forcefully entered the house. Present in the house were the landlord, Mark Lance Jones, and three women who rented the property--Mintha Owens, Monica Owens, and Tracey Washington. The package was found in a shallow puddle of water inside a closed metal cabinet in the basement.
 
 
 4
 On June 19, 1990, Jones was indicted on one count of attempted possession of more than 500 grams of cocaine, with intent to distribute, in violation of 21 U.S.C. § 846. On June 6, 1991, the jury returned a verdict of guilty. Trial counsel moved for acquittal notwithstanding the verdict on the ground of insufficient evidence, and the district court denied that motion. On July 13, 1992, the court sentenced Jones to serve sixty months in prison, followed by four years of supervised release; to perform 250 hours of community service; and to pay a fine of $12,500.
 
 II
 
 5
 In attempting to show that there was insufficient evidence to support his jury conviction, Jones faces a "very heavy" burden. United States v. Vannerson, 786 F.2d 221, 225 (6th Cir.), cert. denied, 476 U.S. 1123 (1986). The question before us is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of a crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original). "The government must be given the benefit of all inferences which can reasonably be drawn from the evidence ... even if the evidence is circumstantial." United States v. Adamo, 742 F.2d 927, 932 (6th Cir.), cert. denied, 467 U.S. 1193 (1984).
 
 
 6
 At trial, the government relied primarily on the testimony of Mintha Owens and Tracey Washington to prove that Jones attempted to have the cocaine delivered to the house. Washington testified that in three conversations between September 1988 and October 8, 1988, the date of the delivery, Jones discussed the delivery of packages to him at the house. He told her that she should sign for the package and then contact him so that he could pick it up. He also told her not to tell anyone about the package.
 
 
 7
 On October 8, 1988, Jones arrived at the house a few minutes before the package was delivered. He told Mintha Owens that he was there to meet some painters about doing some maintenance work on the apartment next door. When the package arrived, Washington signed for it and told Owens that it was for someone at work. Washington placed the package on the fireplace mantel and went to the basement to do some laundry. Owens testified that Jones then told her that the package was his and that his real reason for dropping by was to pick up the package. Owens went to the basement and told Washington that Jones wanted the package. Washington admitted to Owens that it was Jones's package and cautioned Owens not to tell anyone about it. Owens went back upstairs and gave the package to Jones.
 
 
 8
 As Washington came up the stairs, she saw the police outside, and all three ran to the back of the house, with Jones still carrying the package. Owens testified that she saw Jones throw the package over Washington's head and down into the basement. Both Washington and Owens testified that they heard the package land on the basement floor.
 
 
 9
 The officers testified that the package was found in a puddle of water inside a closed metal cabinet, which was located behind a clothesline, on the other side of the washing machine, to the right of the stairway. Neither Washington nor Owens could explain how the package ended up inside the closed cabinet. On cross-examination, Owens testified that it was "impossible," "could not be done," and that no government agent had ever given her a satisfactory explanation. Washington testified that she did not believe that the agents found the package in the cabinet.
 
 
 10
 Washington and Owens testified that, after the agents left, Jones apologized to them and explained that the delivery was not supposed to happen that way. He assured them that nothing bad would happen since the police had not found anything and since the package was not opened. He also assured Washington that if she lost her job with the United States Probation Department because of the incident, he would compensate her. He urged Washington to tell the police that she did not know anything. According to Washington and Owens, Jones never specified what was supposed to be in the package.
 
 
 11
 Jones did not testify, but a DEA agent testified on cross-examination that, during an interview in August 1989, Jones told him that he did not know anything about the package. Jones's counsel established, through cross-examination, that Jones operated a night club in addition to his rental properties; that two men came to the house while the agents were there and mentioned something about meeting Jones to discuss a job; that Jones was romantically involved with Washington and never charged her rent for the apartment at 318 Anna; and that Washington had lied in previous statements to the police about why she signed for the package.
 
 
 12
 The parties stipulated that the substance in the package was one kilogram of 95-97% pure cocaine. A government expert witness testified that cocaine of this purity is normally found only at the wholesale rather than retail or street level and that a person in possession of such a large quantity of cocaine was most likely a dealer. The expert also explained that drug dealers often send drugs to "drophouses" in packages addressed to fictitious persons and that the common practice is to instruct the occupant of the drophouse to sign for the package and turn it over to another person.
 
 
 13
 The pivotal issue in this case was whether Jones was the intended recipient of the package of cocaine. The testimony of Washington and Owens, as summarized above, was the only evidence that supported the government's theory that he was. Jones's claim that there was insufficient evidence to support the conviction is grounded solely in his argument that the testimony of Washington and Owens was unbelievable and that they concocted a self-serving story in order to shift the blame to Jones and exculpate themselves. Jones focuses on two weaknesses in the testimony: 1) Owens and Washington both had claimed that they knew nothing about the package in previous statements; and 2) the improbability of the package ending up in the closed cabinet if Jones hurriedly tossed it down the stairs, as they claim.
 
 
 14
 It is well established that credibility determinations are the province of the jury. United States v. Clark, 928 F.2d 733, 736 (6th Cir.), cert. denied, 112 S.Ct. 144 (1991). Defense counsel, on cross-examination, reviewed at length the inconsistent prior statements. Both Washington and Owens admitted on several occasions that they had lied in the earlier statements. Therefore, the jury had ample opportunity to observe their demeanor and to weigh the credibility of not only their version of the delivery and raid but also their explanation of why they lied in their earlier statements.
 
 
 15
 In addition, Washington and Owens freely admitted that they had no idea how the package ended up in the cabinet. Owens said she thought it was impossible. Washington stated that the officers never gave her an adequate explanation. It is quite possible that their candid bewilderment at how the package ended up in the cabinet (and even skepticism that the officers really found the package in the cabinet) raised their credibility in the eyes of the jury. Regardless, this court can discount the testimony only if it is incredible as a matter of law, and "[t]o be incredible as a matter of law, a witness' [sic] testimony must be unbelievable on its face." United States v. Dunigan, 884 F.2d 1010, 1013 (7th Cir.1989) Although it remains a mystery exactly how the package ended up in the closed cabinet, Washington's and Owens's testimony of what they saw and heard on that day is not unbelievable on its face. This court therefore cannot say that it provides an unreasonable basis for the jury's verdict.
 
 III
 
 16
 Next, Jones contends that he was denied effective assistance of counsel. Jones raises this argument for the first time on appeal. As a general rule, we will not entertain claims of ineffective assistance of counsel that are raised for the first time on appeal " 'because the record of the trial court's proceeding is normally insufficient for evaluating counsel's performance.' " United States v. Swidan, 888 F.2d 1076, 1081 (6th Cir.1989) (quoting United States v. Lopez, 728 F.2d 1359, 1363 (11th Cir.), cert. denied, 469 U.S. 828 (1984)). Although the Sixth Circuit has considered claims of ineffective assistance of counsel on direct appeal in a few cases where the record was adequate to assess the merits of the defendant's allegations, see, e.g., United States v. Wunder, 919 F.2d 34, 37 (6th Cir.1990), we choose not to do so in this case. We believe that claims of ineffective assistance of counsel are best brought by a criminal defendant in a post-conviction proceeding under 28 U.S.C. § 2255 so that the parties can develop an adequate record on the issue and the issue can be considered by a trier of fact. See United States v. Daniel, 956 F.2d 540, 543 (6th Cir.1992); United States v. Frazier, 936 F.2d 262, 267 (6th Cir.1991).
 
 IV
 
 17
 Finally, Jones contends that the jury instruction on aiding and abetting was given in error because no particular accomplice or principal was identified whom Jones could have been aiding and abetting. All that is necessary to justify giving an instruction on aiding and abetting is evidence that the defendant intentionally attempted to assist in the commission of a crime. United States v. Frazier, 880 F.2d 878, 886 (6th Cir.1989), cert. denied sub nom. DeBusk v. United States, 493 U.S. 1083 (1990). A principal or accomplice need not be convicted, charged, or even identified.
 
 V
 
 18
 For the foregoing reasons, we AFFIRM the judgment of the district court.