62 F.3d 1418
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Karl Hubert HOFFMAN, Jr., Defendant-Appellant.
 No. 95-3445.
 United States Court of Appeals, Sixth Circuit.
 Aug. 4, 1995.
 
 Before: ENGEL, NELSON and SUHRHEINRICH, Circuit Judges.
 PER CURIAM.
 
 
 1
 Defendant Karl Hoffman ("Hoffman") appeals his conviction and sentence. A jury convicted Hoffman on one count of making false statements to the government in violation of 18 U.S.C. Sec. 1001. For the reasons that follow, we AFFIRM his conviction and sentence.
 
 I.
 
 2
 Hoffman was the administrator of government contracts for Computer Remarketing Corporation ("CRC"), a company which sold used computer parts. CRC obtained a $1.6 million contract to provide used computer parts to the United States Army in 1989. The contract required CRC to supply 395 nine-channel adapter circuit boards for the Army's computer system by August 1990.
 
 
 3
 As the warehouse manager, Tim Kidd informed Hoffman of the number of parts in inventory that fulfilled the government contract. Because CRC buyers were having difficulty locating used nine-channel adapters, CRC purchased 50 new adapters in 1990 to comply with the contract. Even though shipments of the 395 nine-channel adapters were supposed to be made by August 1990, CRC still needed to provide the Army with 62 adapters in the summer of 1991.
 
 
 4
 Kidd testified that Hoffman asked him to substitute dual disk adapters for the final shipment of nine-channel adapters in the fall of 1991, but he refused. Both Kidd and a CRC engineer, Andrew Laurie, suggested that Hoffman call the Department of Defense to explain the difficulties CRC was experiencing in complying with the contract. Hoffman purportedly refused. In October 1991, a part-time shipping clerk, Tom Muni, found a pile of circuit boards and paper work on his table indicating that the boards were to be shipped on the Army contract. Hoffman instructed Muni to package and ship them even though Muni noticed that some of the boards appeared to be different from the others. Although the DD 250 form indicated that all pieces were nine-channel adapters, only seven of the 62 adapters were nine-channel adapters.[1]
 
 
 5
 Kidd testified that four days later, he noticed that the shipment was made, and was concerned because he knew that CRC did not have that many nine-channel adapters in inventory. Muni told Kidd that Hoffman told him to ship the parts. Kidd states that he confronted Hoffman, who claimed that he would take action to correct the situation. Hoffman admits that he filled out and sent the DD 250 form. It also is undisputed that the rest of the non-conforming goods could not be used on the Army's DAS-3 computer system, although the nonconforming goods had value. The Army paid CRC $21,000, not knowing that it received substituted parts, because the Army kept the boards wrapped in their original containers to prevent contamination.
 
 
 6
 Hoffman was charged in a two-count indictment for violations of 18 U.S.C. Secs. 287 and 1001. A jury convicted Hoffman on one count for making false statements to the government in violation of 18 U.S.C. Sec. 1001. Hoffman was acquitted on the second count, making a false claim for payment in violation of 18 U.S.C. Sec. 287. He was sentenced to a five-month term of incarceration and two years of supervised release, and was ordered to pay $21,000 in restitution. This timely appeal ensued.
 
 II.
 
 7
 Hoffman presents three arguments on appeal: (1) whether the district court erred by not admitting a tape recording of Tom Muni, a government witness, as a prior inconsistent statement under Fed.R.Evid. 613(b); (2) whether the verdict convicting him on Count 1 (making a false statement) and acquitting him on Count 2 (making a false claim for payment) was inconsistent requiring reversal; and (3) whether the district court erred in determining the amount of loss attributable to the government for sentencing purposes.
 
 A.
 
 8
 Hoffman contends that the trial court abused its discretion by ruling that Muni's out-of-court statement was not inconsistent with his testimony and therefore not admissible under Fed.R.Evid. 613(a). Hoffman claims that the tape served a dual role of impeachment and showing the relationship between Muni and Kidd (and their tendency to lie for each other). Hoffman contends that Muni's testimony was inconsistent with a taped interview with a private investigator.[2]
 
 Rule 613(b) provides:
 
 9
 Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate the witness thereon, or the interests of justice otherwise require. This provision does not apply to admissions of a party-opponent as defined in rule 801(d)(2).
 
 
 10
 We review the district court's ruling on the admissibility of a statement under Rule 613(b) for an abuse of discretion. United States v. Distler, 671 F.2d 954, 958 (6th Cir.), cert. denied, 454 U.S. 827 (1981). Upon review of the record, we find that Muni's two statements were not inconsistent; he has consistently stated that Hoffman told him to ship the nonconforming goods. In order for a statement to fall within the scope of Rule 613(b), the statement must in fact be inconsistent. United States v. Hale, 422 U.S. 171, 176 (1975). Here, there is no evidence to support Hoffman's assertion that the statement was inconsistent, and thus the district court's exclusion of the tape recorded statement was not in error.[3]
 
 B.
 
 11
 Hoffman contends that the guilty verdict on Count 1 is inconsistent with his acquittal on Count 2 and must be reversed. Both the Supreme Court and this circuit have held that inconsistent verdicts do not provide a basis for reversal. United States v. Powell, 469 U.S. 57, 64-65 (1984) (verdict could be a result of mistake, compromise or leniency); United States v. LeMaster, 54 F.3d 1224, 1233 (6th Cir.1995). Thus, the Supreme Court has:
 
 
 12
 reject[ed], as imprudent and unworkable, a rule that would allow criminal defendants to challenge inconsistent verdicts on the ground that in their case the verdict was not the product of lenity, but of some error that worked against them. Such an individualized assessment of the reason for the inconsistency would be based either on pure speculation, or would require inquiries into the jury's deliberations that courts generally will not undertake.
 
 
 13
 Powell, 469 U.S. at 66. The proper avenue is to challenge the sufficiency of the evidence on each count rather than challenge a conviction based on an inconsistent verdict. United States v. Frazier, 880 F.2d 878, 883 (6th Cir.1989) (citing Powell, 469 U.S. at 68), cert. denied, 493 U.S. 1083 (1990).
 
 C.
 
 14
 Lastly, Hoffman asserts that the district court erred at sentencing by assessing a four-level enhancement pursuant to U.S.S.G. Sec. 2F1.1 by attributing a $21,000 loss due to Hoffman's false statement. We review a district court's application of the sentencing guidelines de novo, and its supporting factual findings for clear error. United States v. Milligan, 17 F.3d 177, 183 (6th Cir.), cert. denied, 115 S.Ct. 211 (1994). At sentencing, the government must prove the amount of loss by a preponderance of the evidence. United States v. Lloyd, 10 F.3d 1197, 1221 (6th Cir.1993), cert. denied, 115 S.Ct. 219 (1994).
 
 
 15
 Hoffman asserts that because he was acquitted on Count 2, making a false claim for payment, it is improper to assess the loss for his false statement at $21,000--the amount charged in Count 2. He argues that the government was obligated and failed to establish a sufficient nexus between the false statement and the resulting loss. As set forth below, Hoffman's arguments lack merit.
 
 
 16
 First, acquitted conduct may be considered for sentencing purposes because the burden of proof required to convict is higher than that required for consideration of relevant conduct at sentencing. See, e.g., Lloyd, 10 F.3d at 1221. Second, the government succeeded in providing a proper nexus between Hoffman's false statement and the government's loss. The government contends that the false statement on the DD 250, that it received 62 nine-channel adapters when it in fact received 7 nine-channel adapters and the rest were nonconforming and unusable goods, resulted in the following loss. First, the government paid for goods it could not use, and was required to store the goods. Second, once the government discovered that the goods were nonconforming, all 62 boards had to be taken out of circulation and inspected at considerable expense to the government. Third, all 62 boards had to be held as evidence and thus were unavailable for use.
 
 
 17
 Application Note 7(c) to Sec. 2F1.1 instructs that:
 
 
 18
 loss in a procurement fraud or product substitution case includes not only direct damages, but also consequential damages that were reasonably foreseeable. For example, in a case involving a defense product substitution offense, the loss includes the government's reasonably foreseeable costs of making substitute transactions and handling or disposing of the product delivered ... plus ... [the] cost of rectifying the actual or potential disruption to government operations caused by the product substitution. Similarly, in the case of fraud affecting a defense contract award, loss includes the reasonably foreseeable administrative cost to the government and other participants of repeating or correcting the procurement action affected, plus any increased cost to procure the product or service involved that was reasonably foreseeable.
 
 
 19
 U.S.S.G. Sec. 2F1.1, note 7(c). Additionally, Application Note 2 to Sec. 2F1.1 ("valuation of loss") incorporates Sec. 2B1.1, which states that "[w]here the market value is difficult to ascertain or inadequate to measure harm to the victim, the court may measure loss in some other way, such as reasonable replacement cost to the victim." With these principles in mind, we find that the district court did not err in assessing the cost of the shipment of nonconforming goods as the amount of loss.
 
 III.
 
 20
 For the reasons stated above, we AFFIRM.
 
 
 
 [1]
 A DD 250 form may be used as a shipping document and/or an invoice. It may be used as a receiving document as well
 
 
 [2]
 Hoffman further argues that Muni's silence on his tape interview regarding Kidd not being present that day serves as an additional inconsistency. Hoffman never sought to introduce the tape on this ground. Therefore, we decline to address this argument because it is not properly before this court on appeal
 
 
 [3]
 We also note that other testimony was received with respect to the issue of who instructed Muni to ship the nonconforming goods. The jury simply decided to believe Muni