**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Rupert C. DESOUZA, Defendant–
Appellant.**

No. 02–6031.

United States Court of Appeals,
Sixth Circuit.

Jan. 13, 2004.

Timothy R. DiScenza, Asst. U.S. Attorney, U.S. Attorney's Office, Memphis, TN, for Plaintiff–aAppellee.

J. Patten Brown, III, Asst. F.P. Defender, Office of the Federal Public Defender, Memphis, TN, for Defendant–Appellant.

Before KRUPANSKY, MOORE, and ROGERS, Circuit Judges.

ROGERS, Circuit Judge.

Rupert C. DeSouza pled guilty to one count of identity theft due to his part in a scheme to purchase vehicles using false identities. In this scheme, DeSouza was aided by Kyshon Hardemon, who would often use false names to purchase vehicles for DeSouza. After being stopped for driving with a false license and an altered temporary tag, DeSouza failed to appear at a hearing. Roughly a year later, he was caught in Florida and charged in federal court in Tennessee with seven counts of identity theft. At that time DeSouza pled guilty to one count, and the other counts were dropped. He now appeals, claiming the district court erred by: (1) enhancing his sentence two levels based on § 3C1.1 of the 1998 United States Sentencing Guidelines ("U.S.S.G.") because he obstructed justice by failing to appear at the hearing for his motor vehicle violations, and (2) enhancing his sentence an additional two levels under U.S.S.G. § 3B1.1(c) for his role in leading and supervising Hardemon in criminal activity. Because the district court correctly calculated his sentence

under the U.S.S.G., we affirm the judgment of the district court.

*FACTS*

A federal grand jury indicted DeSouza on October 24, 2000 on seven counts relating to identity theft. A plea agreement was reached under which DeSouza would plead guilty to count two of the indictment. Count two of the indictment alleged that DeSouza used the identity of another person to steal a vehicle worth more than $1000. In return for DeSouza pleading guilty to count two, the other six counts were dropped.

As the Presentence Report set forth, DeSouza used false identification, and persuaded others to identify themselves falsely, in order to purchase automobiles. For example, on June 18, 1999, DeSouza allegedly used his name and a credit card from a "Jamie Sackett," whom he identified as his cousin, to rent a Ford Expedition that was never returned. Sackett, when contacted, stated that she did not know DeSouza and that someone had opened several credit cards in her name. Roughly seven months later he allegedly used the identity of "Daniel Grano" to buy a 1993 Mercedes, but the real Grano was unaware of the Mercedes purchase and also had someone open credit cards in his name.

DeSouza and Kyshon Hardemon apparently used roughly the same modus operandi on several other occasions. In February 2000, Hardemon pretended to be "Melissa Hill" to purchase a 2000 Impala. That same month, DeSouza visited a local Lexus dealer and stated that he was looking for a car for his sister. The next day, DeSouza returned with Hardemon to the dealer and used the name of "Melissa Hill" to buy a used 1998 Lexus. They left with the car, and later returned to purchase a

1999 Lexus, but that loan was declined by Toyota Motor Credit Corporation. After about two weeks, Hardemon returned the 1998 Lexus to the dealer.

That same day, DeSouza and Hardemon apparently went to a Chevy dealer and told the sales people that Hardemon was DeSouza's sister, "Meredith Sydnor," and that she wanted to purchase a 2000 Corvette. Sydnor was approved for an almost $50,000 loan, and DeSouza and Hardemon left with the car. The real Meredith Sydnor lived in a different city, and her credit information was fraudulently used. Later the same day, DeSouza and Hardemon went to a Lincoln Mercury dealer where they bought a used Lincoln Navigator.

About two weeks later, on April 6, 2000, authorities found and followed DeSouza, who was driving a Navigator and then a Corvette. DeSouza was arrested on an outstanding warrant relating to the Ford Expedition. The officers seized the Navigator. At the time, DeSouza had four vehicles: a Lincoln Navigator, a Corvette, an Impala, and a Ford Expedition. He was arrested at that time, but the charges were dropped.

Hardemon, when interviewed by investigators that day, stated that DeSouza told her his cousin, Meredith Sydnor from New York, was going to help him finance a car. She claimed that DeSouza had asked her to sign Sydnor's name because Sydnor could not come to Tennessee, and that she talked to a woman on the phone claiming to be Sydnor.

On September 12, 2000, DeSouza and a unknown female allegedly bought a 1997 Nissan Altima in the name of Bruce Smith. On October 6, 2000, the police stopped DeSouza because he was driving a 1997 Nissan Altima with an altered temporary tag. He was also carrying a driver's license with a false name.

DeSouza was scheduled for a court appearance on October 9, 2000, for a misdemeanor theft charge and for motor vehicle violations relating to the license alteration, but he failed to appear. He was apprehended in Florida on December 21, 2001.

### DISCUSSION

## I. Obstruction of Justice: U.S.S.G. § 3C1.1

■ The district court correctly enhanced DeSouza's sentence under U.S.S.G. § 3C1.1. As stated in *United States v. Jackson–Randolph*, 282 F.3d 369 (6th Cir. 2002), "the clear error standard is ... appropriate for reviewing sentencing decisions under § 3C1.1 where the sole issue before the district court is a fact-bound application of the guideline provisions." *Jackson–Randolph*, 282 F.3d at 390. However, where a Guidelines-interpretation issue is purely legal, the *de novo* review standard still applies. *See, e.g., United States v. Canestraro*, 282 F.3d 427, 431 (6th Cir.2002).

Section 3C1.1 provides that

[i]f (A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (i) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense, increase the offense level by 2 levels.

Application note 4(e) further provides that the adjustment applies to "willfully failing to appear, as ordered, for a judicial proceeding." However, Application note 5(d) states that this section does not apply to defendants who "avoid[ ] or flee[ ] from arrest."

This court has held that, with regard to § 3C1.1:

> [W]e agree with our sister circuits that have held that obstructive conduct occurring during the state investigation or prosecution and preceding federal involvement triggers the enhancement even if the federal charge is not identical to the state charge, so long as the underlying behavior is connected to both offenses.

*United States v. Roberts*, 243 F.3d 235, 238 (6th Cir.2001). Further, the court noted that "[t]he determinative factor was that both sets of charges [the state and federal charges], and the obstruction activity, were related to the same underlying activity." *Id.* at 239–40.

Count two of the indictment, to which he pled guilty, involved the theft of the Navigator. At the sentencing hearing, DeSouza was sentenced to imprisonment for 30 months followed by three years of supervised release. At the sentencing hearing, the court enhanced his offense level by two under § 3C1.1 of the U.S.S.G for obstruction of justice because he failed to appear at the October 9, 2000, proceeding. The court enhanced his offense level another two levels under U.S.S.G. § 3B1.1(c) because he played an aggravating role in the offense by supervising Hardemon. He was given a downward adjustment because of his acceptance of responsibility. DeSouza filed a timely notice of appeal, and argues that the two offense level enhancements were erroneous.

There is no real factual dispute in this case. Therefore, the only issue in applying § 3C1.1 to this case is whether DeSouza's failure to appear for the October 9, 2000, hearing relating to charges from his traffic stop and his conviction for identity theft are related to the same underlying activity. DeSouza argues that the altered temporary tag was not "relevant conduct"

to the offense of conviction in this case—identity theft. Indeed, the defense argues that DeSouza probably fled to avoid the inevitable consequences of his actions, but that the flight itself is not an obstruction of justice because there is an insufficient nexus between the conduct involved in identity theft and the state misdemeanor charges.

The Government contends that DeSouza's failure to appear in state court was part of the concealment of the federal identity theft crime for which he was convicted. At sentencing, the Government admitted that this obstruction enhancement was a "little bit peripheral" compared to most obstruction cases, but that the state charges related to the stolen Altima, which was stolen by means of using a false identity. The Government argued in front of the district court that when the police stopped DeSouza, they only were aware that he (1) had an altered temporary tag, (2) possessed a false drivers license, and (3) was driving a vehicle listed as stolen. At this point, the officer was unaware of the details of the theft and scheduled the court hearing. By the time of the scheduled hearing, the Government had discovered that the car had been bought using that false drivers license, and this was "part and parcel" of the entire identity theft offense.

The district court held that since the hearing in which DeSouza failed to appear involved charges relating to the stolen car—misdemeanor theft charges and the violation of motor vehicle registration laws—that hearing was relevant and directly related to count 6 (the Altima) and the scheme in which he was involved. The court concluded that the failure of DeSouza to appear was "part and parcel of concealing the theft" of cars and the identity theft.

Section 3C1.1 provides for a two level sentencing enhancement if the defendant

willfully obstructs or impedes an investigation and the obstructive conduct was related to the offense of conviction or a closely related offense. U.S.S.G. § 3C1.1. The misdemeanor charges related to the stolen Altima he was driving at that time, and at the time of the missed hearing, the Government was aware of the manner that the Altima was stolen. DeSouza's failure to appear impeded the investigation of the stolen Altima, which led to the discovery of the other stolen cars, including the Navigator upon which his conviction was based. Thus, the district court was correct in its determination that the two level sentencing enhancement was proper.

## II. Organizer, Leader, Supervisor, or Manager of a Criminal Activity: § 3B1.1(c)

■ The district court was also correct in its judgment that DeSouza's sentence should be enhanced by two levels under § 3B1.1(c) because he led and/or supervised another person, Hardemon, in a criminal activity. This court has had some difficulty articulating the appropriate scope of review for enhancements under § 3B1.1(c). *See United States v. Solorio,* 337 F.3d 580, 600 (6th Cir.2003). As in *Solorio,* we need not resolve the issue because the district court should be affirmed even under the least deferential standard.

Section 3B1.1(c) states that "[i]f the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b), increase by two levels."[1] U.S.S.G. § 3B1.1(c). Application note 2 states that "[t]o qualify for an adjustment under this section, a defendant must have been the organizer, leader, manager, or supervisor of one or more other participants." Application note 1 describes a participant as "a person who is criminally responsible for the commission

of the offense, but need not have been convicted." A person, such as an undercover police officer, who is not criminally responsible, is not a participant. U.S.S.G. § 3B1.1 Application note 1.

DeSouza argues that Hardemon was not culpable because she was duped, and, therefore, DeSouza could not have led or supervised her in a criminal activity. The defense principally relies on *United States. v. Lewis,* 68 F.3d 987 (6th Cir.1995). In *Lewis,* a defendant ran a credit card scam and was convicted under 18 U.S.C. § 1029(a)(2). *Lewis,* 68 F.3d at 988. The defendant would use credit cards in to buy gift certificates in a Mississippi casino, and, to avoid detection, she would ask young ladies to redeem them in return for tokens. *Id.* The district court enhanced her sentence two levels under § 3B1.1 because of her leadership role. *Id.* This court reversed, stating that the young women were aware that something suspicious was going on but that suspicion was not enough to render them culpable under § 1029(a)(2), which requires a knowing use with intent to defraud. *Id.* at 989. We stated:

> Without this knowledge, the women could not have violated § 1029(a)(2) either as principals or as aiders and abettors. *See United States v. Frazier,* 880 F.2d 878, 886 (6th Cir.1989) (listing the elements of aiding and abetting as (1) an act that contributes to the commission of the crime and (2) an intention to aid in the commission of the crime). Because the district court did not find that the women possessed the knowledge and intent required by the statute, they could not be criminally responsible for the commission of the offenses under § 1029(a)(2) and could not be "partici-

---

**1.** Sections (a) and (b) involve criminal activi-

ties with five or more "participants."

pants" for the purpose of § 3B1.1(c) of the Sentencing Guidelines.

*Id.* at 989–90.

The district court granted the Government's request for a two level enhancement even while acknowledging that "there was an elaborate scheme to ... dupe Ms. Hardeman [sic] into believing that she was authorized to sign the documents and purchase a vehicle in Mr. De-Souza's cousin's name." J.A. at 34. Although the district court did not expressly state that Hardemon was culpable, it had enough evidence in the false identities and addresses she used to help purchase four cars to conclude that she was culpable. At two car dealerships, Hardemon helped buy two cars under the name Melissa Hill, and later at two other car dealerships, she helped buy two different cars as Meredith Sydnor. She also used false addresses in these purchases. In one instance, she even returned the car to the dealer. Even if she believed that she was helping De-Souza buy a car by standing in for his "cousin," that did not mean she was not criminally culpable. There is little doubt that Hardemon was more knowledgeable about the criminal nature of her conduct than the casino women in *Lewis*. Thus, the district court properly, albeit implicitly, found that Hardemon was a criminally responsible participant in the scheme, even if she was in some sense duped.

Accordingly, we AFFIRM the judgment of the district court.

KAREN NELSON MOORE, Circuit Judge, concurring in part and dissenting in part.

I concur in all but Part II of the majority's opinion. In light of the district court's statement acknowledging the "elaborate scheme ... to dupe Ms. Hardem[o]n" and because the district court did not expressly state that Hardemon was culpable, I would remand to the district court to permit it to make the factual findings necessary for a determination of whether DeSouza's sentence should be enhanced two levels under U.S.S.G. § 3B1.1(c) as a leader or supervisor of a criminally responsible person.